IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MERIDIAN MUT. INS. CO.,   :   CIVIL ACTION
                          :   No. 08-1995
        Plaintiff,        :
                          :
v.                        :
                          :
JAMES GILLIGAN BUILDERS,  :
                          :
        Defendant.        :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          JUNE 18, 2008

Plaintiff Meridian Mutual Insurance Company ("Meridian") brought this action for declaratory relief under 28 U.S.C. §§ 2201 and 2202 against James Gilligan Builders ("Gilligan").  Meridian filed the instant motion for summary judgment seeking an Order from the Court declaring that it has no duty to defend or indemnify Gilligan.  For the reasons that follow, Meridian's motion for summary judgment is granted.

I.   BACKGROUND

A. Facts

The instant action arises out of a case pending in the Chester County Court of Common Pleas (the "Chester County Case"). The Chester County Case was brought by Robert and Vickie Haller (the "Hallers") against Glen Mary Associates, L.P., Garvin Mitchell Corporation (the builder of the home), Bentley Homes

Ltd., and Bentley Homes Realty, Inc. (collectively, the "Bentley Defendants").  The Hallers purchased a home from Glen Mary Associates that leaks at several locations and has continued to leak despite repeated efforts to repair them.  The Hallers claim breach of contract, breach of express and implied warranties, negligence,[1] and violations of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 et seq. (the "UTPCP")[2]

The Bentley Defendants then impleaded a number of parties who worked on the house, including Gilligan, the window installer.  The joinder complaint currently in full force and effect is the Third Amended Joinder Complaint,[3] which alleges breach of contract ("Count One"), seeks contractual indemnification ("Count Two"), and seeks contribution and/or indemnification under Pennsylvania Rule of Civil Procedure 2252 ("Count Three").  In particular, the Bentley Defendants seek recompense from Gilligan to the extent that they are found liable

_____

[1]     Count Three (negligence) of the Hallers's Complaint alleges that "Defendants had a duty to perform services in connection with the construction of the [Hallers's] residence in a reasonable and workmanlike manner; consistent with industry practices and customs; and free from the defects described herein."  (Hallers's Compl. ¶ 34.)

[2]     Gilligan does not contend that coverage under the insurance contract includes claims under the UTPCP.

[3]     As conceded by the parties, the operative complaint for the purposes of this Court's review is the Third Amended Joinder Complaint.  (Summ. J. Hr'g Tr. 3:25, 4:1-2; 21:22-25, 22:1-5; 33:22-25, 34:1-10, Nov. 10, 2008.)

for faulty installation of the windows.  Of particular relevance, the Third Amended Joinder Complaint specifically states "[t]he Bentley Defendants, without adoption and without admitting the truth thereof and solely for the purposes of this Third Amended Joinder Complaint, incorporate by reference all well-pleaded allegations contained in [the Hallers's] Complaint and reassert same against [Gilligan] . . . as if the same were set forth verbatim."  (Third Am. Joinder Compl. ¶ 9.)

Under the terms of Gilligan's commercial general liability insurance policy with Meridian, Gilligan is insured for property damage caused by an "'occurrence' that takes place in the 'coverage territory'[] and . . . occurs during policy period.'"  (Def.'s Mot. Summ. J. Ex. C at 24, doc. no. 14-5.)[4]  An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Id. at 35.)

B. Procedural History

On April 28, 2008, the instant complaint was filed with the Court.  On June 25, 2008, the case was dismissed for lack of prosecution.  On August 19, 2008, the Court's Order dismissing the instant complaint for lack of prosecution was vacated.  On

---

[4]    Meridian notes that it did not insure Gilligan at the time the Hallers's home was constructed.  Meridian does not argue, however, that this fact precludes coverage.

September 4, 2008, Gilligan filed its answer.  Thereafter, on
September 26, 2008, Meridian filed the instant motion for summary
judgment.[5]  On November 10, 2008, oral argument was held before
the Court.[6]


II.  ANALYSIS

    A.   <u>Rule 56(c) Standard</u>

         Summary judgment is proper when "the pleadings, the
discovery and disclosure materials on file, and any affidavits,
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or
non-existence would affect the outcome of the suit under
governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

---

         [5]   Meridian is currently defending the Chester County Case
on Gilligan's behalf under a reservation of rights.  (Summ. J.
Hr'g Tr. 20:5-11.)

         [6]   The Court has diversity jurisdiction over the instant
action.  Meridian is an insurance company licensed to issue
insurance policies in the Commonwealth of Pennsylvania and is
incorporated under the laws of the State of Indiana.  Gilligan is
a Pennsylvania entity with its principal place of business in
Pottstown, Montgomery County, Pennsylvania.  The amount in
controversy exceeds $75,000.  <u>See</u> 28 U.S.C. § 1332.

         Venue is proper because Meridian alleges that Gilligan
is an entity with its principal place of business in Montgomery
County, and a substantial part of the events or omissions giving
rise to the cause of action occurred in Chester County,
Pennsylvania, which is in this judicial district.  28 U.S.C. §§
118, 1391.

-4-

248 (1986).  An issue of fact is "genuine" when there is
sufficient evidence from which a reasonable jury could find in
favor of the non-moving party regarding the existence of that
fact.  Id. at 248-49.  "In considering the evidence, the court
should draw all reasonable inferences against the moving party."
El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).

        "Although the initial burden is on the summary judgment
movant to show the absence of a genuine issue of material fact,
'the burden on the moving party may be discharged by showing-that
is, pointing out to the district court-that there is an absence
of evidence to support the nonmoving party's case' when the
nonmoving party bears the ultimate burden of proof."  Conoshenti
v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004)
(quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2
(3d Cir. 2001)).  Once the moving party has thus discharged its
burden, the nonmoving party "may not rely merely on allegations
or denials in its own pleading; rather, its response must--by
affidavits or as otherwise provided in [Rule 56]--set out
specific facts showing a genuine issue for trial."  Fed. R. Civ.
P. 56(e)(2).


        B.    Meridian's Motion for Summary Judgment

              1.    Duty to defend or indemnify

        Meridian moves for summary judgment on the grounds that

                              -5-

it has no duty to defend or indemnify Gilligan in the Chester
County Case.  Meridian specifically argues that the allegations
in the Third Amended Joinder Complaint do not constitute an
"occurrence" under the insurance policy and Pennsylvania law.

Under Pennsylvania law, an insurer has a duty to defend
if the insurance contract provides coverage.  Bombar v. West Am.
Ins. Co., 932 A.2d 78, 86-87 (Pa. Super. Ct. 2007).  In making
this determination, a court is first directed to compare the
allegations in the complaint with the coverage provisions in the
insurance contract.  Id. at 87 (citing Keystone Spray Equip.,
Inc. v. Regis Ins. Co., 767 A.2d 572, 574 (Pa. Super. Ct. 2001));
see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v.
Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006) (holding
review is limited to the allegations in the complaint).  Treating
all allegations in the complaint as true, a court must then
determine whether the insurer has a duty to defend.  Id.  A duty
to defend continues so long as the complaint alleges a cause of
action that potentially falls within the coverage provision of
the insurance contract.  Id. (citing Unionamerica Ins. Co. v.
J.B. Johnson, 806 A.2d 431, 43-34 (Pa. Super. Ct. 2002)).  The
obligation ceases, however, if the cause of action upon which the
duty to defend exists is dismissed.  Id.  Under Pennsylvania law,
a duty to indemnify, on the other hand, cannot exist in the
absence of a duty to defend.  The Frog, Switch & Mfg. Co., Inc.

-6-

v. The Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999).

In Geisler v. Motorists Mut. Ins. Co., 556 A.2d 391, 393-94 (Pa. 1989), when interpreting provisions of an insurance contract, the Pennsylvania Supreme Court explained:

> [t]he interpretation of an insurance policy is a question of law that is properly reviewable by the court . . . .  In construing the policy we are mindful that "policy clauses providing coverage are interpreted in a manner which affords the greatest possible protection to the insured . . . .  The insured's reasonable expectations are the focal point in reading the contract language." . . . Our object, as is true in interpreting any contract, is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument . . . .  Where a provision of a policy is ambiguous, the policy is to be construed in favor of the insured and against the insurer, the drafter of the agreement . . . .  Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

Geisler, 556 A.2d at 393; see also Bombar, 932 A.2d at 87 (citing Dorohovich v. West Am. Ins. Co., 589 A.2d 252, 256 (Pa. 1990)).

Since, an "occurrence" is essentially "an accident," an allegation of negligence[7] would trigger Meridian's duty to

---

[7]     During oral argument, Meridian contended that the contribution and/or indemnification claim, Count Three of the Third Amended Joinder Complaint, does not name Gilligan as a defendant in the heading.  In response, defense counsel said the omission of Gilligan as a defendant in the caption was a mistake because Gilligan is referenced repeatedly as liable under Count Three.  After further review of the complaint, Count Three of the Third Amended Joinder Complaint includes Gilligan as a named defendant.  The Court is not persuaded that a heading exclusively dictates who the named defendants are in a particular count when a party is repeatedly named in the substantive paragraphs of that count.  Specifically, Gilligan is addressed as an "Additional Defendant" in paragraph 29 of the Third Amended Joinder

defend.  See Kvaerner, 908 A.2d at 888-89.  Meridian contends,
however, that the Third Amended Joinder Complaint in the Chester
County Case alleges faulty workmanship, breach of contract, and
breach of warranty by the Bentley Defendants, which do not
constitute "occurrences" under Pennsylvania law.  In contrast,
Gilligan argues that the Third Amended Joinder Complaint includes
an allegation of negligence, thereby triggering Meridian's duty
to defend.

        Here, the relevant terms of the insurance contract
apply to property damage liability that is caused by an
"occurrence" during the policy period.  The Hallers's Complaint
specifically alleges negligence on the part of the Bentley
Defendants.  The Third Amended Joinder Complaint "incorporate[s]
by reference all well-pleaded allegations contained in [the
Hallers's] Complaint and reassert[s] same against [Gilligan] . .
. as if the same were set forth verbatim."  Moreover, Count Three
of the Third Amended Joinder Complaint seeks contribution and/or
indemnification to the extent the Bentley Defendants are held
liable to the Hallers, including negligence.[8]  Under these

---

Complaint.  Thereafter, Additional Defendants are named as liable
parties eight times under Count Three and Gilligan was named
once.

        [8]     Meridian cites Judge Gardner's decision in Peerless
Ins. Co. v. Brooks Systems Corp., Civil Action No. 06-CV-3653,
2008 WL 859243 (E.D. Pa. Mar. 27, 2008), in support of its motion
for summary judgment.  In Peerless, the plaintiff insurance
company filed a motion for summary judgment seeking a declaratory

circumstances, an allegation of negligence exists within the four corners of the Third Amended Joinder Complaint.

    2.  <u>Gist of the action</u>

Meridian argues, however, that regardless of the characterization of Gilligan's conduct in the Third Amended Complaint, coverage under the insurance contract is not triggered because the Third Amended Complaint sounds in contract rather than tort.  Under the gist of the action doctrine, plaintiffs may not recast a breach of contract claim into a tort claim: (1) arising solely from a contractual relationship between the parties; (2) when the alleged duties breached were based on the contract itself; (3) where liability stems from the contract; and

---

judgment on the duty to defend or indemnify claims against the insured defendant in an underlying case.  <u>Id.</u> at *1.  The insured defendant entered into an agreement with a cement company to design and construct equipment for a quarry and cement plant. <u>Id.</u> at *3.

The cement company brought an action against the insured defendant because of defects in the equipment.  <u>Id.</u>  The claims in the underlying case were breach of contract, breach of warranty, and professional negligence.  <u>Id.</u>  Although Judge Gardner ruled that the plaintiff insurance company did not owe the insured defendant a duty to defend or indemnify, the decision was based on a concession by the insured defendant "that all the underlying claims in the [underlying case] involve contract claims."  <u>Id.</u> at *8.

Here, there is no such concession by Gilligan.  To the contrary, Gilligan argues there are multiple viable theories of recovery, including negligence.  Under these circumstances, the Court is not persuaded that <u>Peerless</u> is directly on point.

(4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim. Reardon v. Allegheny College, 926 A.2d 477, 486 (Pa. Super. Ct. 2007) (citing Hart v. Arnold, 884 A.2d 316, 340 (Pa. Super. Ct. 2005)).  "The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.'" Id. at 487-87 (quoting Hart, 884 A.2d at 339).

Meridian relies upon Freestone v. N.E. Log Homes, Inc., 819 A.2d 550 (Pa. Super. Ct. 2003), Snyder Heating Co., Inc. v. Pa. Mfrs. Ass'n Ins. Co., 715 A.2d 483 (Pa. Super. Ct. 1998), and Redevelopment Auth. of Cambria County v. Int'l Ins. Co., 685 A.2d 581 (Pa. Super. Ct. 1996).

In Freestone, the plaintiffs purchased a log home kit from the defendant log home manufacturer. Id. at 551-52.  The logs sold to the plaintiffs were defective, permitting wind and rain to enter the plaintiffs' home. Id. at 552.  When the plaintiffs complained, the defendant log home manufacturer recommended the use of a certain type of caulk to seal the home, which actually made the problem worse. Id.  Once the plaintiffs sued, the defendant log home manufacturer's insurance company

declined both coverage and defense under the terms of the
insurance policy.  Id.[9]

On appeal from a decision of the trial court entering
judgment on the pleadings, the Superior Court reversed the
decision in favor of the defendant log home manufacturer's
insurance company because the gist of the action sounded in
contract, and the resulting damage did not constitute an
"occurrence" under Pennsylvania law.  Id. at 553-54.  The
Superior Court specifically rejected the plaintiffs' negligence
claim because the cause of action was based solely on "a failure
to live up to a contractual agreement."  Id. at 554.

In Snyder, a heating company entered into two
maintenance contracts with a school district to service its
burners and boilers.  715 A.2d at 484.  Over the course of the
performance of the two contracts, damages were sustained and the
school district sued the heating company for the costs of
repairing and replacing damaged boilers.  Id.  The heating
company's insurer denied coverage under the insurance contract

---

[9]     On September 28, 1995, at trial, neither the defendant
log home manufacturer nor its insurance company defended the
case.  Freestone, 819 A.2d at 552.   Following the plaintiffs
case-in-chief, the trial judge found the defendant log home
manufacturer liable, and thereafter entered judgment on December
22, 1995.  Id.  On February 3, 2000, the plaintiffs filed a writ
of execution, seeking to garnish the defendant log home
manufacturer's insurance company.  Id.  Judgment on the pleadings
was then granted in favor of the plaintiffs and against the
insurance company.  Id.

for the underlying action, and the heating company sought
declaratory judgment on the duty to defend or indemnify.  Id. at
484.  The trial court held that the insurer had a duty to defend
and indemnify the heating company.  Id.  On appeal, the Superior
Court vacated the declaratory judgment against the insurer and
held there was no duty to defend the heating company.  Id. at
488.  Applying the gist of the action doctrine, the Superior
Court reasoned that "[w]hile [the heating company] attempts to
cloak the [s]chool [d]istrict's allegations in tortious
principles, the claims asserted against the heating company are
clearly those sounding in breach of contract."  Id. at 487.

In Redevelopment Auth., a public redevelopment
authority entered into a maintenance service agreement with a
township and the township's water system operator whereby the
township's water system was to be made compliant with statutory
environmental standards.  685 A.2d at 583.  The public
redevelopment authority failed to do so, and the township and its
water system operator sued for breach of the maintenance
agreement.  Id.  The complaint alleged, inter alia, a failure to
perform under the maintenance service agreement, negligence in
performing under the contract, and unjust enrichment.  Id. at
584.  The insurer to the public redevelopment authority sought
declaratory judgment on the duty to defend or indemnify because
the complaint involved breaches of contractual duties that did

-12-

not constitute an "occurrence." Id. at 588-89.  The
Redevelopment Auth. court held that the insurer did not have a
duty to defend or indemnify the public redevelopment authority
because the underlying action involved breach of contract, which
was not an "occurrence" under the insurance contract.  Id. at
589.  The court recognized the presence of negligence claims in
the underlying complaint, but reasoned "it cannot be disputed
that their claims arise out of and are based upon duties imposed
upon the [public redevelopment authority] solely as a result of
the contract between [public redevelopment authority and the
township] through [the township's water system operator]." Id.

     Here, similar to the facts in Freestone, Snyder, and
Redevelopment Auth., although the underlying action characterizes
the dispute between the Hallers, Bentley Defendants, and Gilligan
as one involving negligence, the gist of the action sounds in
contract.  The Bentley Defendants agreed to perform work for the
Hallers pursuant to a written agreement.  Gilligan in turn agreed
to perform work for the Bentley Defendants pursuant to either a
written or oral agreement.[10]  The indemnification and

---

[10]     Although Gilligan agrees that a breach of contract
claim would not trigger coverage under the commercial general
liability policy, it argues that it did not perform any work in
this case pursuant to any agreement with the Hallers and disputes
whether there is a contract between it and the Bentley
Defendants.  Gilligan misses the point.  Whether or not Gilligan
had a written agreement with the Hallers or the Bentley
Defendants, Gilligan performed pursuant to a mutual understanding
with the Bentley Defendants.  It is the breach of that

contribution that the Bentley Defendants seek from Gilligan is based on the Bentley Defendants' breach of their agreement with the Hallers and Gilligan's breach of its agreement with the Bentley Defendants.  Whatever damages the Bentley Defendants are held liable for, and from which they seek indemnification and contribution from Gilligan, they are not the result of tortious conduct but rather that of the breach of the contract between the Bentley Defendants and the Hallers and the Bentley Defendants and Gilligan.  Therefore, because the Hallers's claim against the Bentley Defendants and the Bentley Defendants claim against Gilligan is one in contract, the Bentley Defendants may not pursue an action for indemnification and contribution against Gillian on a theory of negligence.[11]

        3.   Occurrence under Pennsylvania law

        The Court's analysis now turns to whether claims of faulty workmanship, breach of contract, or breach of warranty constitute an occurrence under Pennsylvania law.  The Third

understanding to perform certain work for the Bentley Defendants for consideration, whether written or oral, formal or informal, implied or express, as a principal or as an agent of the Bentley Defendants, rather than of some duty imposed by social policy that is at issue.

        [11]    To the extent that the Bentley Defendants are pursuing a direct action against Gilligan, that action too would be barred by the gist of the action doctrine since it would be based on a mutual understanding by the parties and not on a breach of social policy.

Circuit recently considered a similar motion for summary judgment in a declaratory judgment action involving obligations under a commercial general liability policy.  Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591 (3d Cir. 2009).  In CPB Int'l, an import and wholesale company of a chondroitin entered into a contract with a vendor.  Id. at 594.  The import and wholesale company allegedly delivered deficient chondroitin to the vendor, which was not detected until after it was mixed by the vendor with glucosamine thereby rendering the product useless.  Id.  The vendor then sued for breach of contract.  Id.  The importer and wholesaler submitted the claim to its insurer under a commercial general liability policy, and the insurer assumed a defense under a reservation of rights.  Id.  Thereafter, the insurer filed an action seeking declaratory judgment that it does not owe the importer and wholesaler a duty to defend or indemnify against the vendors claims.  Id. at 595.

        The Third Circuit analyzed the commercial general liability policy at issue in accordance with Pennsylvania law. Id. at 595.  The CPB Int'l court carefully considered Kvaerner and Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., Inc., 941 A.2d 706 (Pa. Super. Ct. 2007), appeal denied, 963 A.2d 471 (Table) (Pa. 2008).[12]  CPB Int'l, 562 F.3d at 596-97; see

---

        [12]   The Court recognizes that CPB Int'l, Kvaerner, and Gambone are not procedurally the same to the instant case.  Here, Gilligan was impleaded by the Bentley Defendants for

Kvaerner, 908 A.2d at 899 (holding "the definition of 'accident'
required to establish an 'occurrence' under the [CGL] policies
cannot be satisfied by claims based on faulty workmanship.");
Gambone, 941 A.2d at 714, 718 (holding claims of faulty
workmanship do not constitute "occurrences" where "damage caused
by rainfall that seeps through faulty home exterior work to
damage the interior of a home is not a fortuitous event that
would trigger coverage");[13] cf. Peerless Ins. Co. v. Brooks Sys.

───────────────

indemnification and/or contribution whereas CPB Int'l, Kvaerner,
and Gambone involved direct actions.  Nevertheless, the Court's
analysis remains the same.

    [13]   Gilligan argues that Gambone is not applicable, in
part, because the party in that case "conceded a point that they
shouldn't have, and that the [Gambone] [c]ourt's analysis was
based on the concession of that legal argument."  Hr'g Tr. 16:2-
4, Nov. 10, 2008.  In particular, the Superior Court of
Pennsylvania wrote as follows:

        Gambone concedes Kvaerner stands for the broad
        principle that an insurance claim under an occurrence
        based CGL policy that defines the term "occurrence" as
        an accident cannot be premised on a claim of faulty
        workmanship.  Gambone argues the Colonian and Caputo
        actions do not merely involve claims for faulty
        workmanship that led to the failure of the stucco
        exteriors but also involve claims for ancillary and
        accidental damage caused by the resulting water leaks
        to non-defective work inside the home interiors.
        Gambone argues the resulting water damage constitutes
        an "occurrence" even though the damage to the faulty
        stucco exteriors does not.  We do not see any merit in
        the distinction Gambone attempts to create.

Gambone, 941 A.2d at 713 (citations omitted) (emphasis added).

        Here, the Court finds Gilligan's interpretation of
Gambone to be a distinction without a difference.  Gilligan's
argument is similar to the aforementioned argument made in

Corp., No. 06-CV-3653, 2008 WL 859243, at *9 (E.D. Pa. Mar. 27, 2008) (holding no duty to defend or indemnify against claim of faulty workmanship relating to mining equipment when damages were limited to the equipment itself).

In particular, the Third Circuit reasoned "it is largely within the insured's control whether it supplies the agreed upon product, and the fact that contractual liability flows from the failure to provide that product is too foreseeable to be considered an accident." CPB Int'l, 562 F.3d at 596. Accordingly, the Third Circuit held that actions arising under a contract are not covered by a commercial general liability policy under Pennsylvania law. Id. at 593.

Here, the Hallers allege defects in stucco application, sealing at the windows, doors, and other penetration points through the stucco, missing flashings, and other defects in the windows and roofing. These allegations are very similar to those in Kvaerner and Gambone. It is evident that the Hallers's claims are based on faulty workmanship. According to the Third Amended Joinder Complaint in the Chester County Case, the builder and subcontractors, including Gilligan, allegedly constructed the Hallers's home in a defective manner. The resulting damage is typical of poor workmanship. The Pennsylvania Supreme Court in

---

Gambone, which did not persuade the Superior Court of Pennsylvania.

-17-

Kvaerner has made clear that commercial general liability
insurance policies are not work product guarantees.  908 A.2d at
899 n.10; see also CPB Int'l, 562 F.3d at 596-97.  Therefore,
Meridian does not have a duty to defend the faulty workmanship
claim against Gilligan, and since a duty to indemnify cannot
exist without a duty to defend, Meridian likewise has no duty to
indemnify Gilligan.

Furthermore, Pennsylvania law teaches that breach of
contract and breach of warranty claims do not constitute an
"occurrence" under insurance liability policies.  CPB Int'l, 562
F.3d at 593, 589 (foreclosing actions arising under contract
theory with respect to the duty to defend pursuant to a
commercial general liability policy under Pennsylvania law and
holding "the Supreme Court of Pennsylvania would conclude that an
underlying claim alleging breach of contract would not trigger
coverage under a CGL policy."); Pa. Mfg.'s Ass'n Ins. Co. v. L.B.
Smith, Inc., 831 A.2d 1178, 1183 (Pa. Super. Ct. 2003);
Freestone, 819 A.2d at 553 (citing Redevelopment Auth., 685 A.2d
at 589).  Gilligan concedes that this is so as a matter of
contract, but argues that there is no contract between it and the
Hallers and disputes whether there is a contract between it and
the Bentley Defendant, and submits that a finding of liability
can only be predicated upon negligence.  As previously discussed,
the Court finds no merit in either argument.  See supra n.10.

V.   CONCLUSION

          For the reasons set forth above, Meridian's motion for summary judgment is granted.  An appropriate order shall be entered.